IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HANNAN RIBIYOU KABUSHIKIGAISHA,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>AGU RAMEN, LLC; PERSONAL REPRESENTATIVE OF THE ESTATE OF HISASHI TEDDY UEHARA; and AGU ISENBERG, LLC,<br><br>    Defendants/ Counterclaimants. | CIV. NO. 19-00379 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT II OF THE COUNTERCLAIMS, ECF NO. 185 |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT II OF THE COUNTERCLAIMS, ECF NO. 185**

**I. INTRODUCTION**

Before the court is a Motion by Plaintiff/Counterclaim Defendant Hannan Ribiyou Kabushikigaisha ("Hannan"), ECF No. 185, requesting partial summary judgment against the counterclaims asserted by Defendants/ Counterclaimants Agu Ramen, LLC; the Personal Representative of the Estate of Hisashi Teddy Uehara ("Uehara"); and Agu Isenberg, LLC (collectively, "Counterclaimants"). Specifically, the Motion requests summary judgment against

two counterclaims alleging contractual breach—first, the counterclaim that Hannan breached its contractual obligation to pay Uehara a $30,000 monthly management fee, and second, the counterclaim that Hannan breached the terms of a prior settlement agreement by bringing the instant lawsuit.  ECF No. 185-1 at PageID ## 3903, 3906.  The court GRANTS Hannan's Motion as to the first counterclaim.  As to the second counterclaim, the court GRANTS the Motion in part and DENIES it in part.

## II.  BACKGROUND

Paragraphs 53 through 55 of "Count II (Contract)" of the Counterclaims contain the relevant allegations:

> 53.  At all times material herein Uehara as the Manager has executed the expansion plan as authorized through 2018 but Hannan has failed to honor the contractual obligation to pay Uehara/Agu Ramen LLC the $30,000 per month as stipulated in the Purchase Agreement and has not been willing to finance these outstanding amounts committed thereto.
>
> 54.  At the meeting in January 27, 2019, all the issues were fully discussed and the parties agreed and intended to settle their difference to focus on the on-going business and did enter in a settlement agreement release each other and reaffirming the appointment of Uehara as the sole Manager.
>
> 55.  The acts by Hannan to breach this settlement between the parties is in bad faith and a breach of their agreement to settle the open disputes which they raised

> and execute the agreement after reviewing it for a month
> in Japan as it was given to them only in English.

ECF No. 52-1 at PageID # 1324.

For the alleged "contractual obligation to pay Uehara/Agu Ramen LLC the $30,000 per month," Counterclaimants rely on a payment provision in a 2016 "Purchase Agreement" between Hannan and AGUPlus, LLC,[1] ECF No. 185-7. In the Purchase Agreement, Hannan purchased 60% ownership in AGUPlus through a capital investment. *Id.* at PageID # 3972 (Hannan receiving 60% ownership in "Buzinkus, LLC," which was concurrently renamed to "AGUPlus, LLC," *id.* at PageID # 3977). The purchase was authorized by AGUPlus through its vice president and member Uehara. *See id.* at PageID # 3981 (Uehara signing on behalf of Buzinkus as its "Vice president"); *id.* at PageID # 3972 (AGU Ramen, LLC, i.e., Uehara,[2] retaining 40% ownership).

For the alleged contractual obligation to not pursue legal actions covered by the "settlement agreement [that] release[d] [the parties]" of "open

---

[1] This case centers on the corporate entity "AGUPlus, LLC," which Plaintiff "name[s] as a nominal defendant and real party-in-interest . . . solely in a derivative capacity." ECF No. 73 at PageID # 2499 (First Amended Complaint). In other words, Plaintiff is a member of AGUPlus and is bringing claims on behalf of AGUPlus against various Defendants, including Uehara, the former manager of AGUPlus. *See, e.g., id.* at PageID ## 2526–28.

[2] For purposes of this Order, the court treats Uehara and Agu Ramen, LLC, as one and the same. *See* ECF No. 52-1 at PageID # 1311 ("[Uehara] is the sole owner and a founding member of Agu Ramen . . . ."); *see also id.* at PageID # 1324 ("As a direct and proximate result of the breach of contract for payment and the settlement as stipulated Uehara/Agu Ramen LLC has been damaged . . . .").

disputes," Counterclaimants rely on a waiver-and-release provision in a 2018 "Capital Infusion Agreement" between Hannan and AGUPlus, ECF No. 185-9. In the Capital Infusion Agreement, Hannan acquired a total of 90% ownership in AGUPlus through a commitment to invest an additional $1,401,820 into the company, and Uehara's ownership was diluted to 10%. *Id.* at PageID # 4005. Counterclaimants do not allege that Hannan failed to pay the $1,401,820.

      Counterclaimants filed their counterclaims on September 26, 2019, the same day they filed their Answer to Plaintiff's initial Complaint. *See* ECF Nos. 52, 52-1. Although the present Motion concerns only the counterclaims, some of the allegations of the initial and Amended Complaints are important to understanding the arguments raised in the Motion. In that regard, the initial Complaint, ECF No. 1, was the basis for Plaintiff's "Ex Parte Motion for Temporary Restraining Order [("TRO")] and Motion for Preliminary Injunction," ECF No. 4. The court granted Plaintiff's request for a TRO on July 15, 2019. ECF No. 16. Although the court granted that request before Counterclaimants filed their counterclaims, the court rejected an argument similar to Counterclaimants' current allegation that Plaintiff breached the waiver-and-release provision by bringing the instant lawsuit. *See id.* at PageID # 175 (rejecting the argument that "the present lawsuit is barred by the Agreement's release provision," because "[f]or the purposes of [the TRO motion], the court determines that the release of

any claims in the future must be tethered to claims involving the [Capital Infusion Agreement], not a future event unrelated to the Agreement").

Following both the court's TRO and the Counterclaimants' filing their counterclaims, Plaintiff filed a "First Amended Complaint" asserting nineteen claims against one or more of the Counterclaimants and two claims against other parties.[3]  *See* ECF No. 73 at PageID ## 2495, 2526–56.  One factual basis for Plaintiff's claims is an alleged "scheme to steal [AGUPlus's] Isenberg Restaurant," which was carried out in 2019, according to the First Amended Complaint.  That scheme comprised Uehara's notifying AGUPlus's employees that the Isenberg location had found "new commitment[s] by new investors," Uehara's "chang[ing] [the] payroll processing service from AGUPlus to Agu Isenberg," and Uehara's establishing a new bank account unaffiliated with AGUPlus in order to support Agu Isenberg's autonomous operations.  *Id.* at PageID ## 2522–23 (background allegations); *see also id.* at PageID ## 2530–31 (alleging breach of contract against Uehara because "Uehara participated in, if not directed the formation of Defendant Agu Isenberg, and attempted to transfer the operation of, and assets from,

---

[3] Counts II and VII of the First Amended Complaint concern those other parties, which consist of Grant K. Kidani (now, Penny Kyoung Suk Kidani, Personal Representative of the Estate of Grant K. Kidani); Agu Express, Inc.; Agu Ramen Cupertino LLC; and Angel Capital Inc.  *See* ECF No. 73 at PageID # 2495.  Despite not asserting counterclaims themselves, those other parties "join[] in" Counterclaimants' Opposition to the Plaintiff's Motion.  *See* ECF No. 196 at PageID # 4085 (joinder regarding ECF No. 195, Counterclaimants' Opposition to Plaintiff's Motion for Partial Summary Judgment).

5

AGUPlus' Isenberg location to Defendant Agu Isenberg without authorization from Hannan").

Another factual basis for Plaintiff's claims is the allegation that, in 2018, Uehara "hatched [a] plan to start competing ramen restaurants in Korea and California using AGUPlus' logo, namesake, equipment, and recipes under separate and distinct legal entities." *Id.* at PageID # 2508 (background allegations); *see also id.* at PageID ## 2526–27 (alleging breach of fiduciary duty because Agu Ramen and Uehara "diverted AGUPlus' assets, income and business opportunities, including, without limitation, creating a competing ramen businesses [sic] in Korea and California using stolen trademarks, trade dress, and trade secrets").

Hannan filed its Motion for Partial Summary Judgment on October 11, 2021.  ECF No. 185.  Counterclaimants filed their Opposition to the Motion on November 18, 2021, three days after the operative deadline, *see* Local Rule 7.2.  ECF No. 195.  On that same day, other parties to this case (Defendants Agu Express, Agu Ramen Cupertino, Angel Capital, and Kidani, *see supra* note 3) filed a notice of Joinder as to Counterclaimants' Opposition.  *See* ECF No. 196.  Hannan filed its Reply on November 22, 2021.  ECF No. 197.  The court held a hearing on the Motion on December 6, 2021.  ECF No. 202.

## III. **STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted). The court views the facts and draws reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

# IV.  ANALYSIS

**A.     Paragraph 53 of the Counterclaims: Breach of Payment Obligations**

Counterclaimants claim that Hannan failed to pay Uehara the $30,000 monthly management fee, breaching the payment provision in 2016 Purchase Agreement.  *See* ECF No. 52-1 at PageID # 1324, ¶ 53; ECF No. 195 at PageID ## 4044–45.  The payment provision reads as follows:

> The Company will continue to pay the $30,000 per month that is currently paid to AGU Ramen, LLC for the operational day-to-day management services for the Company and its restaurants in the state of Hawaii, but any future change or adjustment of the amount requires the approval of both Members.

ECF No. 185-7 at PageID # 3978.

In support of its Motion, Hannan emphasizes that the payment provision plainly requires AGUPlus—not Hannan—to pay the management fee. *See* ECF No. 185-1 at PageID # 3903.  The court agrees with Hannan.  The payment provision unambiguously requires the "Company" to pay Uehara the monthly management fee.  And the "Company" is defined in the Purchase Agreement as "Buzinkus, LLC," i.e., AGUPlus.  ECF No. 185-7 at PageID ## 3972, 3977.  Hannan is merely a member of AGUPlus—a limited liability company organized under Hawaii law, *see id.* at PageID # 3972—and members of

a limited liability company are not ordinarily responsible for any debt, obligation, or liability of the company, *see* Hawaii Revised Statutes ("HRS") § 428-303(a).[4]

In their Opposition, Counterclaimants argue that Hannan assumed responsibility for the management payments by making those payments over many months. *See* ECF No. 195 at PageID ## 4045–46 ("Hannan's own conduct in continuing to provide funds that paid the management fee demonstrates Hannan's acknowledgment of its obligation to provide funds to pay the management fees as required in the . . . Purchase Agreement."). Put differently, Counterclaimants argue that Hannan's course of conduct created an implied contractual obligation for him to pay Uehara the monthly management fee. *See id.*

There are two problems with that argument. First, the language of the Purchase Agreement cuts strongly against implied contractual obligations: The payment provision unequivocally assigns the payment obligation to AGUPlus, not Hannan. And the terms of the Agreement—including the payment provision—may not be "amended, waived, discharged or terminated other than by a written instrument referencing this Agreement and signed by the Company and Hannan." ECF No. 185-7 at PageID # 3979. Further, the Agreement "constitute[s] the full and entire understanding and agreement among the parties with regard to the

---

[4] Counterclaimants do not argue that Hannan is personally liable under the exceptions identified in HRS § 428-303(c), or under an alter ego theory, *see generally Calipjo v. Purdy*, 144 Haw. 266, 277, 439 P.3d 218, 229 (2019).

subjects hereof"; "[n]o party shall be liable or bound to any other party in any manner with regard to the subjects hereof or thereof by any warranties, representations or covenants except as specifically set forth herein or therein." *Id.* at PageID # 3980.

    The second problem is lack of support in the law: While there is ample law supporting the proposition that a party's course of conduct can *waive* an affirmative obligation under a contract,[5] there is not ample law supporting the proposition that a party's course of conduct—e.g., temporarily curing another party's lack of performance—can *create* an affirmative obligation for that party that is inconsistent with the express terms of a contract. Counterclaimants have cited no such precedent, and the court has found caselaw suggesting the contrary. *See, e.g.*, *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 374–75, 666 N.W.2d 251, 259 (2003) (distinguishing between "modification," "waiver," and "forfeiture" of contractual terms, and holding that, "where the intent to modify is not express, . . . restrictive amendment provisions are not necessarily dispositive, but are highly relevant in assessing a claim of amendment by course of

---

[5] *See, e.g.*, *Wilart Assocs. v. Kapiolani Plaza, Ltd.*, 7 Haw. App. 354, 359–60, 766 P.2d 1207, 1210–11 (1988) ("[A] waiver 'may be expressed or implied,' and 'it may be established by express statement or agreement, or by acts and conduct from which an intention to waive may reasonably be inferred.' . . . The lower court [erred by] not consider[ing] that a waiver [of a completion deadline in a construction contract] reasonably could be inferred from [the property owner's] acts and conduct . . . ." (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 160 at 845 (1966)) (alterations omitted)).

conduct," and that course of conduct "must overcome not only the substantive portions of the previous contract allegedly amended, but also the parties' express statements regarding their own ground rules for modification or waiver as reflected in any restrictive amendment clauses").[6]  Thus, even assuming the allegations of Hannan's course of conduct to be true, the court rejects Counterclaimants' argument that the course of conduct established a contractual obligation for Hannan to pay Uehara the monthly management fee.

Counterclaimants additionally argue that Hannan failed to satisfy its obligation to provide unspecified funding for the "expansion" of AGUPlus, as purportedly alleged in paragraph 53 of the counterclaims.  *See* ECF No. 195 at PageID ## 4044–45 ("It is Hannan's change of position, and breaching its agreement to funds [sic] expansion and pay Agu Ramen, LLC and Uehara, that amount to breach of contract.").  The court also rejects that argument.  First, it is unclear whether the allegation in paragraph 53 that Hannan "has not been willing

---

[6] *Cf. Mulberry-Fairplains Water Ass'n, Inc. v. Town of N. Wilkesboro*, 105 N.C. App. 258, 412 S.E.2d 910 (1992) (holding that a water-purchase contract had been modified to require the supplier to furnish water in excess of the contract maximum, where the supplier supplied over the maximum "for at least *fifteen years*" and where supplier "benefitted from its conduct by accepting payment, at the contract rate, for the water furnished in excess").  Here, Hannan paid the management fee for less than two years, at most, as the Purchase Agreement was executed on July 28, 2016, ECF No. 185-7 at PageID # 3972, and the payments allegedly "stopped in April, 2018," ECF No. 195 at PageID # 4045.  Further, it is tenuous at best to view Hannan as benefitting from the payments—the payments may be more accurately viewed as detrimental to Hannan because AGUPlus was never a profitable business endeavor, *see* ECF No. 195 (Counterclaimants adverting to Hannan's allegations in the First Amended Complaint regarding AGUPlus's losses).

to finance *these outstanding amounts* committed thereto," ECF No. 52-1 at PageID # 1324, concerns only the alleged commitment to pay the management fee or, as Counterclaimants suggest, some other commitment to provide an unspecified amount of funding for AGUPlus's expansion efforts. Second, even construing that allegation in favor of Counterclaimants, the language quoted above is insufficient to allege a claim of contractual breach—it is unclear how someone can breach an obligation to be "willing to" take some action.

Third and most importantly, Counterclaimants fail to point to any contractual language establishing that Hannan was obligated to fund expansion efforts outside of the recorded capital investments, e.g., the Capital Infusion Agreement's $1,401,820, which Counterclaimants do not suggest was unpaid. *See* ECF No. 195 at PageID ## 4033, 4038 (asserting that Hannan's representative "was interested in . . . expanding into a chain of 200 restaurants in the United States," that "[t]he parties agreed that Hannan would fund the expansion," and that on "March 31, 2018, Hannan withdrew its commitment to fund operations or expansion," but not citing to any evidence supporting those assertions); ECF No. 52-1 at PageID ## 1312–13 (alleging that there was an "agreement of Mr. Tsutomu Hamaya on behalf of Plaintiff Hannan, to fund and finance said expansion," and that Hannan and Uehara subsequently signed the 2016 Purchase Agreement); *see also* ECF No. 185-7 at PageID ## 3972, 3979–80 (2016 Purchase Agreement,

12

wherein Hannan promised to loan ¥150,000,000 to, and to invest ¥250,000,000 in, AGUPlus in exchange for membership interest, and wherein a provision states that the Agreement "constitute[s] the full and entire understanding and agreement among the parties"); ECF No. 185-8 at PageID # 3993 (2016 Amended Operating Agreement, executed on the same day as the Purchase Agreement, wherein Hannan and Uehara agreed that "[n]o Member shall be required to make other contributions to the Company at any time," and that "[a]ny Member may, but is not obligated to, loan to the Company").

In sum, Hannan has established as a matter of law that it did not breach the Purchase Agreement by failing to pay Uehara the monthly management fee or by failing to provide unspecified funds for expansion—Hannan was under no such obligations. *See Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985) ("When [an interpretive ruling] is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law . . . ."). Hannan is thus entitled to summary judgment on those breach-of-contract counterclaims. The totality of the allegations in paragraph 53 of the counterclaims are dismissed.

**B.     Paragraphs 54–55 of the Counterclaims: Breach of Settlement Agreement**

Counterclaimants claim that Hannan breached the waiver-and-release provision of the 2018 Capital Infusion Agreement by bringing the instant lawsuit.

*See* ECF No. 52-1 at PageID # 1324, ¶¶ 54–55; ECF No. 195 at PageID ## 4048–50.  The release provision reads as follows:

> Hannan and AGU Ramen LLC both mutually *waive any conflict of interest*, directly or indirectly, between the two partners in AGU, including their Members, Officers, Directors and Owners.  The parties enter this agreement in good faith and after careful consideration of the options available fully consent to the capital infusion as surplus, and *release each other from any and all claims past, present and future*.

ECF No. 185-9 at PageID # 4005 (emphases added).

Construing Counterclaimants' allegations most favorably to them, they allege that all claims asserted by Hannan in the First Amended Complaint were discharged by the waiver-and-release provision.  *See* ECF No. 52-1 at PageID # 1324, ¶¶ 54–55.  In its Motion contesting those allegations, Hannan relies on the court's holding in the TRO, ECF No. 16, that the waiver-and-release provision "provides [Counterclaimants] with no relief" because, "[f]or the purposes of [the TRO Motion], . . . the release of any claims in the future must be tethered to claims involving the Agreement, not a future event unrelated to the Agreement," *id.* at PageID # 175.  *See* ECF No. 185-1 at PageID # 3908.

Crucially, Hannan's Motion focuses on only claims that arose *after* the Capital Infusion Agreement, not before.[7]  *See* ECF No. 185-1 at PageID # 3908

---

[7] The parties made clear at the December 6, 2021 hearing that they understood the Motion to concern only claims arising after the Capital Infusion Agreement, i.e., "future" claims.
(continued . . .)

14

("As such, [Hannan] and AguPlus did not agree to release the *future claims* raised in the Complaint and First Amended Complaint in this case.  [Hannan]'s claims against the defendants relate to the wrongful conduct of Uehara, Kidani, and others . . . *that occurred well after the Capital Infusion Agreement was executed*." (emphases added and removed)).  The court's TRO likewise addressed only claims that arose after the Capital Infusion Agreement because that Order concerned Plaintiff's initial Complaint, which focused on Uehara's scheme to steal AGUPlus's Isenberg restaurant, allegedly occurring later in 2019.  *See* ECF No. 1 at PageID # 6, ¶ 17; ECF No. 16 at PageID ## 170–71, 176 ("Plaintiff has also established that the transfer of the AGUPlus Isenberg restaurant to AGU Isenberg is likely to cause irreparable damage to Plaintiff. . . .  For the same reasons, the court concludes that the balance of equities favors granting the Motion, and doing so is in the public interest.").

But, unlike the initial Complaint and the court's TRO, the First Amended Complaint encompasses actions that appear to have occurred before the late-2018 or early-2019 Capital Infusion Agreement.  For example, the First

---

What is unclear, however, is the exact date on which the Capital Infusion Agreement was executed.  The agreement itself bears a date of December 31, 2018.  *See* ECF No. 185-9 at PageID # 4005.  Yet, the Counterclaimants allege in their counterclaims that the meeting generating the agreement occurred on January 27, 2019.  ECF No. 52-1 at PageID # 1324.  And the Counterclaimants assert in their Opposition, possibly mistakenly, that the "settlement meeting [was held] on January 17, 2019."  ECF No. 195 at PageID # 4036.  Regardless, the exact date of execution of the agreement is not material to the court's resolution of Hannan's Motion.

15

Amended Complaint alleges that Uehara misappropriated AGUPlus's assets by, "[i]n 2018," "comp[ing] meals in the amount of $7,074.01, and us[ing] his family comp 102 times for a total of $13,477.00." ECF No. 73 at PageID ## 2506–07, ¶ 46. It also alleges that Uehara misappropriated AGUPlus's intellectual property by operating a competing Agu Ramen restaurant in Korea, which was "established on September 18, 2018, has been open since November 2018[,] and bears the recognizable 'AGU a ramen bistro' logo, design and colors." *Id.* at PageID ## 2507–10. And it alleges that Uehara misappropriated AGUPlus's intellectual property by operating a competing Agu Ramen restaurant in California, which "was registered with the California Secretary of State" "[o]n October 1, 2018," and was subject to an "August 16, 2018" "Memorandum of Understanding" granting the California restaurant rights to AGUPlus's intellectual property. *Id.* at PageID ## 2507–09, 2511.

Despite requesting judgment against Counterclaimants' allegation that Hannan breached the Capital Infusion Agreement by asserting "future" claims in this suit, Hannan does not attempt to parse the various claims in the First Amended Complaint and specify which of those claims are "future" claims and which are "past" or "present" claims. The court will not do that work for Hannan. *See W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012) ("We will not do [a] [party's] work for it, either by manufacturing its legal arguments, or by

16

combing the record on its behalf for factual support."). Instead, the court reiterates its more general holding in the TRO: "Future" claims must be related to Hannan's capital investment in order to have been discharged by the waiver-and-release provision. *See* ECF No. 16 at PageID # 175 ("[C]laims relating to the Agreement, not unknown and unrelated claims, are subject to arbitration [and the waiver-and-release provisions].").[8]

Accordingly, Hannan's claims concerning the alleged scheme to steal the Isenberg restaurant are "future" claims and were not discharged by the waiver-and-release provision, because they are unrelated to the infusion of capital. *See* ECF No. 16 at PageID ## 174–75. The Motion is thus granted as to the allegation in paragraphs 54–55 of the counterclaims that Hannan's assertion of claims concerning the Isenberg restaurant constitutes a breach of the waiver-and-release provision. Summary judgment is also granted in favor of Hannan on the allegation

---

[8] *See also Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 266, 141 P.3d 427, 439 (2006) ("'[E]xculpatory provisions are not favored by the law and are strictly construed against parties relying on them,' the effect of the broad exculpatory language contained in the [defendant's] waiver should be construed to limit the waiver's scope to simple negligence claims; it does not protect the [defendant] against its own gross negligence or willful misconduct." (quoting *Fujimoto v. Au*, 95 Haw. 116, 156, 19 P.3d 699, 739 (2001)); *Alleva v. Municipality of Anchorage*, 467 P.3d 1083, 1089–90 (Alaska 2020) ("In short, settlement agreements that waive future liability will be upheld subject to certain limits, and in any event they will be strictly construed."); 8 *Williston on Contracts*, § 19:21 (4th ed. 2010) ("Generally, clauses limiting future liability are strictly construed by the courts and are unenforceable unless assented to in a context of free and understanding negotiation. . . . [E]xculpatory provisions must clearly, unambiguously, and unmistakably inform the party relinquishing its rights of exactly what is being waived.").

in paragraphs 54–55 that Hannan's assertion of any other "future" claims unrelated to the infusion of capital constitutes a breach.[9] Yet, for the claims in the First Amended Complaint that appear to have arisen before the Capital Infusion Agreement—the totality of which the court does not attempt to describe—the court declines to address whether those claims were released or waived by the Capital Infusion Agreement. As to such "past" and "present" claims, the court lacks adequate briefing from the parties regarding the identity of those claims and whether they were, or could have been, discharged by the waiver-and-release provision. Hannan, instead, chose to focus only on "future" claims in its Motion.[10]

## V. **CONCLUSION**

For the foregoing reasons, Hannan's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. It is GRANTED with

---

[9] Again, Hannan did not attempt to identify which claims in the First Amended Complaint may relate to the Capital Infusion Agreement and which may not. So the court's ruling is necessarily set forth in broad terms.

[10] Counterclaimants also argue that the allegations in paragraphs 54–55 include Hannan breaching the implied covenant of good faith and fair dealing by filing this suit. ECF No. 195 at PageID ## 4049–50 (quoting the "bad faith" language in paragraph 55 of the counterclaims). Because Hannan did not address that allegation in its Motion, the court does not address that allegation, either, beyond rejecting it to the extent Counterclaimants assert that Hannan's filing of "future" claims unrelated to capital infusion could be in "bad faith." The court also does not address Counterclaimants' assertion that Hannan acted in bad faith by allegedly terminating Uehara from his management position in AGUPlus, *see id.*, because Hannan did not address that assertion in its Motion. And the court declines Counterclaimants' request for a continuance under Federal Rule of Civil Procure 56(f), having found that additional discovery would not aid the resolution of this Motion. *See Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995) ("Assuming that [plaintiff] properly requested Rule 56(f) relief, the district court had discretion to deny the relief.").

respect to the counterclaims that Hannan breached obligations to pay the monthly management fee and to provide unspecified funding for expansion. It is also GRANTED with respect to the counterclaim that Hannan breached the terms of the Capital Infusion Agreement by asserting legal claims that arose after that agreement and that are unrelated to that capital infusion. But the Motion is DENIED with respect to the counterclaim that Hannan breached the Capital Infusion Agreement by asserting legal claims that arose before or during the execution of that agreement.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, December 13, 2021.



        /s/ J. Michael Seabright
        J. Michael Seabright
        Chief United States District Judge

*Hannan Ribiyou Kabushikigaisha v. Agu Ramen, LLC, et al.*, Civ. No. 19-00379 JMS-KJM, Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment as to Count II of the Counterclaims, ECF No. 185